IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| BOBBY SAMPLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:08-CV-232 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claims for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons that follow, defendant's motion for summary judgment [doc. 14] will be granted, and plaintiff's motion for summary judgment [doc. 10] will be denied.

I.

*Motion to Expedite*

The court first notes "Plaintiff's Motion to Expedite" [doc. 16], filed on March 5, 2009. Therein, "counsel states that Plaintiff has indicated that his only income is from Food Stamps and he is on the verge of homelessness due to inability to make *mortgage payments*." [Doc. 16] (emphasis added).

Plaintiff filed an in forma pauperis application with this court, signed under penalty of perjury on July 21, 2008. [Doc. 1]. Therein, plaintiff denied having any income, real estate, or notes payable to banks. He stated that he lives in public housing. He claimed that his wife also has no income due to "issues with her breathing (anxiety depression, etc[.])," and that the couple was "rely[ing] on other people for all" income.

The assertions in plaintiff's in forma pauperis application are consistent with statements appearing in the administrative record. For example, in March 2006, plaintiff told the Commissioner that he had been evicted from the mobile home that he was renting to own, and that he would soon be moving into public housing. [Tr. 101, 115-16]. Plaintiff told a counselor in April 2006 that he had moved into a housing project [Tr. 296], and the following week unsuccessfully sought a letter from an examining physician "in regards to him not being able to do community service for living in his [public] housing." [Tr. 292]. In June 2007, plaintiff gave sworn testimony that he lives in a public housing project. [Tr. 525].

The court is thus bewildered by the current plea for expedited treatment for allegedly being "*on the verge of homelessness* due to inability to make *mortgage payments*." It is inconceivable that in approximately seven months a purportedly resourceless family in which both adults are purportedly unable to work could have transitioned from public housing into circumstances involving a residential mortgage. Regardless, the court's rulings this date on the parties' dispositive motions render plaintiff's motion to expedite moot.

2

II.

*Procedural History*

Plaintiff was born in 1968. He filed for benefits in October 2005, with disability alleged as of September 23, 2005, on the basis of "back problems, hip imbalance, [and] numbness in right leg." [Tr. 59, 67, 417]. The applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in June 2007.

That same month, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from "musculoskeletal problems" and migraines, which are "severe" impairments but not equal, alone or in combination, to any impairment listed by the Commissioner. [Tr. 20-21]. Relying on medical expert testimony, the ALJ found plaintiff to have the residual functional capacity ("RFC") to perform a range of medium work. [Tr. 21-26]. Citing vocational expert testimony, the ALJ then determined that plaintiff remains able to perform a significant number of jobs existing in the regional and national economies. [Tr. 27-28]. Plaintiff was accordingly found ineligible for benefits.

Plaintiff then sought review by the Commissioner's Appeals Council. Review was denied on June 20, 2008, notwithstanding the submission of additional medical records. [Tr. 6, 9].[1] The ALJ's ruling then became the Commissioner's final decision. *See* 20 C.F.R.

---

[1] Plaintiff's additional documents [Tr. 444-507] are not discussed in his brief and are thus not an issue on appeal. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

3

§§ 404.981, 416.1481. Through his timely complaint, plaintiff has brought his case before this court for review. *See* 42 U.S.C. § 405(g).

III.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

4

death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[2] Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

---

[2] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

IV.

*Analysis*

As discussed, the ALJ found plaintiff capable of performing at least a range of medium work. On appeal, plaintiff argues that the decision was not supported by substantial evidence. Specifically, plaintiff contends that the ALJ improperly disregarded: (1) his use of a cane, and (2) his mental health complaints. Any issue not specifically raised by plaintiff has been waived. *See, e.g., Hollon*, 447 F.3d at 490-91.

A. <u>Cane</u>

Plaintiff testified that he uses a cane "constantly" but admitted that the devise was not prescribed by any doctor. [Tr. 519]. In September 2006, Dr. Paul Jett noted lumbar stiffness, right hamstring tightness, and sacroiliac tenderness. [Tr. 372]. Plaintiff was using a cane that day, but Dr. Jett explained to him that he was using it on the wrong side of his body based on his pain complaints. [Tr. 370, 372, 519].

Later that year, physical therapy staff observed decreased mobility with plaintiff "leaning heavily onto cane during ambulation in clinic." [Tr. 341]. Plaintiff continued to use a cane at his subsequent appointments with Dr. Jett [Tr. 359, 362, 364], and Dr. Denise Harris noted clinical evidence of sacroiliac inflammation. [Tr. 366]. In April

6

2007, plaintiff presented to Pro Therapy Services with moderately to markedly limited lumbar mobility and was again using a cane. [Tr. 356].

On appeal, plaintiff argues that the ALJ's ruling is "flawed by his failure to consider Plaintiff's use of a cane for ambulation." [Doc. 11, p. 15]. It is true that the ALJ referenced the assistive device only briefly in his decision. [Tr. 25]. Importantly, however, the ALJ relied on medical expert testimony which took the cane into account. Plaintiff's argument is accordingly without merit.

Dr. Susan Bland testified as a medical expert at the administrative hearing. Dr. Bland reviewed the entire medical record and heard plaintiff's full testimony, including his claim of constantly using a cane. [Tr. 527-28]. Dr. Bland noted that some unprescribed cane usage was reflected in the record. [Tr. 529-30]. She concluded plaintiff could nonetheless perform a range of medium exertion, explaining that "there's very little in the way of objective evidence to explain his back pain. He's just had minimal findings on x-ray and on MRI. And his neurologic exams have been basically negative." [Tr. 531]. Dr. Bland further testified that it would be "possible" but "unusual" for such minimal spinal problems to cause the amount of pain alleged. [Tr. 532].

The ALJ's adoption of Dr. Bland's testimony is supported by substantial evidence. Dr. Jett consistently noted full strength and negative straight leg raise testing. [Tr. 357, 359, 364, 369, 372]. An October 2005 lumbar MRI offered "minimal" findings. [Tr. 226]. Nurse practitioner Martha Anderson declined plaintiff's request to "sign [a] form

stating he cannot work." [Tr. 269]. Ms. Anderson subsequently noted that plaintiff's MRI "does not show pathology to support severe pain." [Tr. 265].[3]

In March 2005, following a "negative" lumbar MRI, plaintiff's treating physician at "The Family Practice Center" speculated that plaintiff may be using his pain complaints for secondary financial gain. [Tr. 138]. The physician had "a bad feeling about this for several reasons" and declined to issue plaintiff any further pain medication prescriptions. [Tr. 138]. The physician suggested vocational training in April 2005 and told plaintiff "to find the kind of work that he can do." [Tr. 135-36].

Consulting examiner Dr. David McConnell opined in November 2005 that plaintiff can perform a range of medium exertion. [Tr. 277]. Dr. McConnell formed that opinion after, in material part, reviewing a lumbosacral x-ray, conducting a musculoskeletal examination, and observing plaintiff's gait. [Tr. 276-77]. Nonexamining Dr. Frank Pennington restricted plaintiff to medium exertion after taking into account the "partially credible" pain complaints. [Tr. 286].

When treated in January 2006 for moderate muscle spasm and lumbar strain after moving furniture, plaintiff was observed by emergency room staff to be ambulating with minimal difficulty. [Tr. 324]. There was no clear etiology for his complaints of extreme

---

[3] Curiously, plaintiff sought treatment from Ms. Anderson on January 10, 2006, for back pain secondary to "moving furniture." [Tr. 264]. Less than three weeks before, plaintiff had assured the Commissioner, "I am really disabled. . . . because of my back pain" [Tr. 38], and a mere five days prior had told psychiatrist Sukhender Karwan "that he has significant limitations with bending, twisting or reaching out for things." [Tr. 299].

8

back pain. [Tr. 324]. Neurologist Julie Jacques subsequently wrote that there is "no evidence on MRI or EMG/nerve conduction study to corroborate his pain" or his radiculopathy. [Tr. 333, 337]. In January 2007, Dr. Jacques similarly wrote that plaintiff "has no evidence of lumbar radiculopathy on EMG and only minimal degenerative changes on MRI." [Tr. 349].

Dr. Bland considered the entire record, including cane usage, in reaching the conclusions upon which the ALJ relied. It should be made clear that the ALJ did not find that plaintiff suffers no physical limitation. Plaintiff's complaints were taken into account by the ALJ in restricting the RFC to a range of medium work. It is the *severity* of plaintiff's condition that is at issue, and substantial evidence supports the conclusion that the present complaints are overstated.

There is evidence that plaintiff suffers from conditions that could reasonably be expected to cause some discomfort. *See generally Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). However, viewing the present administrative record as a whole, a reasonable fact-finder could conclude that the documented conditions are not "of such a severity that [they could] reasonably be expected to produce the alleged disabling pain." *See id.* at 853. The ALJ's conclusions pertaining to plaintiff's mobility were supported by substantial evidence and must be affirmed.

9

## B. Depression

Plaintiff also criticizes the ALJ for not assessing psychological limitations. In a "Disability Report - Appeal" form completed in late 2005, plaintiff told the Commissioner that his condition had worsened in that he was "very stressed out due to family, financial and lots of personal issues." [Tr. 92]. At the administrative hearing, plaintiff testified that he was "in the deep, deep state of depression" due to financial concerns but could not afford antidepressant medication. [Tr. 527].

At an initial evaluation in January 2006, Dr. Karwan diagnosed an adjustment disorder with mixed anxiety and depression "secondary to his current stress of being unemployed, not being productive and being frustrated with things going on with his disability [applications]." [Tr. 300]. In March 2006, Dr. Karwan observed what appeared to be "extreme discomfort" and opined that plaintiff would receive a diagnosis of "clinical depression if the symptoms persist." [Tr. 297]. In June 2006, Dr. Karwan described plaintiff as "[q]uite consumed somatically" [Tr. 289], but with only "clinically . . . some small depression." [Tr. 406]. In October 2006, Dr. Karwan felt that plaintiff was "less somatically preoccupied" than at his previous appointment three months prior. [Tr. 399]. Plaintiff "acknowledge[d] some low-grade anxiety and depression." [Tr. 399].

Substantial evidence supports the ALJ's decision to assign no mental limitations. [Tr. 21]. As noted by the ALJ, the administrative record indicates only episodic complaints along with "some small depression" and "low-grade anxiety."

Plaintiff's claim that he is unable to afford antidepressant medication is particularly unavailing. The in forma pauperis application shows that plaintiff can afford a $120.00 monthly cell phone bill. He can also afford a pack of cigarettes per day despite purportedly having emphysema. [Tr. 274, 303, 400]. Plaintiff's style of life is completely inconsistent with that of a person who suffers from the limitations alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

V.

*Conclusion*

The Commissioner's final decision survives substantial evidence review and will not be reversed by this court. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge

11